IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EDDIE WILLIAMS,                          :
                                         :
            Petitioner,                  :
      v.                                 :    3:20-CV-908
                                         :    (JUDGE MARIANI)
SUPERINTENDENT, SCI GREEN                :    (Magistrate Judge Carlson)
                                         :
            Respondent.                  :

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is the Magistrate Judge's Report and Recommendation

("R&R") (Doc. 30) to the Petitioner Eddie Williams' Petition for Writ of Habeas Corpus (Doc.

1) pursuant to 28 U.S.C. § 2254.  The Magistrate Judge recommends that Williams' petition

be denied because "Williams' claims are unexhausted or without merit."  (Doc. 30 at 1).

Upon review of the R&R, Williams' objections thereto (Doc. 36), and all other relevant

documents, the Court overrules all of Williams' objections to the R&R except those that

address Williams' claims of ineffective assistance of counsel and directly related

Confrontation Clause violation based on the trial court's unobjected to reading of his co-

defendant's unconfronted and unredacted Criminal Information to the jury.  The Court

concludes that Williams is entitled to relief under § 2254; accordingly, this Court will vacate

Williams' conviction and sentence.

## II. FACTUAL AND PROCEDURAL HISTORY

A jury convicted Williams of all 20 charges against him, including first degree murder, conspiracy, and aggravated assault, related to an incident in March 2014 where one man was killed and another was seriously injured. (Doc. 18-18 at 1-5). Williams was sentenced to life imprisonment, plus a term of 21 ½ to 47 years imprisonment. (*See generally* Doc. 18-19). The Pennsylvania Superior Court summarized the factual background of the instant case as follows:

> On March 10, 2014, Appellant and his two co-defendants, Rick Cannon ("Cannon") and Akeita Harden ("Harden"), drove to an apartment complex in Lebanon, Pennsylvania. N.T., 10/9/15, at 779. Patrolman James Gross was dispatched around 9:55 a.m. to the apartment complex after gunshots were heard. N.T., 10/6/15, at 29. It is undisputed that one man was killed and other man was wounded.
>
> After arriving at the apartment complex, Gross saw two men enter a car driven by a female. *Id.* at 32. The men were eventually identified as Cannon and Appellant. *Id.* at 42, 53. The female driver was later identified as Harden. N.T., 10/9/15, at 787-88. Gross told the men entering the vehicle to stop; they did not, and a car chase ensued. N.T., 10/6/15, at 32. Gross testified the car was moving at "very high speeds, weaving in and out of traffic, at oncoming traffic" and was "posing great risk." *Id.* at 37. Appellant fled the car, and a police officer found a handgun and cocaine in the direction Appellant had run. *Id.* at 45. Appellant was eventually apprehended in Philadelphia on October 6, 2014. N.T., 10/8/15, at 634-37.
> . . .
>
> Cannon pleaded guilty and was sentenced before Appellant's October 2015 trial began. N.T., 10/6/2015, at 21. At trial Appellant's co-defendant Harden incriminated Appellant while testifying about the events of March 10, 2014, and her relationship with Appellant. N.T., 10/9/15, at 753-95. Harden was also cross-examined by Appellant's counsel. *Id.* at 795-880. On October 14, 2015, Appellant was found guilty of all charges and was sentenced to life

2

imprisonment on December 2, 2015. N.T., 10/14/15, at 1236-45; Trial Ct. Order, 12/2/15. Appellant did not file a post-sentence motion.

(Doc. 18-27 at 3-5).

On December 3, 2015, Williams filed a Notice of Appeal, alleging the trial court erred in failing to sever his case from Akeita Harden's case and for not suppressing the recorded telephone conversations between Williams and Harden from Lebanon County Prison. (Doc. 18-23 at 3). Williams' trial counsel filed an *Anders* brief arguing that Williams' claims are meritless, and trial counsel also filed a Petition for Withdrawal, which the court granted. (Doc. 18-27 at 5 n.17, 12). The Pennsylvania Superior Court affirmed Williams' sentence on August 24, 2016, and Williams did not file a Petition for Allowance of Appeal to the Pennsylvania Supreme Court. (*Id.* at 12).

The Magistrate Judge summarizes the remaining procedural history of the case as follows:

Williams then filed his PCRA petition on July 10, 2017.[1] (Doc. 1). This petition alleged six claims of ineffective assistance of trial counsel, four claims of prosecutorial misconduct, and argued that the weight of the evidence was insufficient to sustain the verdict. PCRA counsel was appointed, and counsel thereafter filed two amended petitions, (Docs. 18-30, 18-31), with the second amended petition alleging twelve claims of ineffective assistance of counsel. (Doc. 18-34, at 3-4). A hearing was held on March 26, 2018. (Doc. 18-32). At the hearing, Williams testified on his own behalf, and trial counsel, Harry Fenton, Esq., was called by the Commonwealth. (Doc. 18-34, at 4). The PCRA court ultimately denied the petition. (*Id.*, at 34). Williams, still represented by

_____

[1]The respondent alleges the PCRA petition was filed on July 14, 2017 and thus was untimely. This argument is addressed later in this Report and Recommendation. For the purposes of the procedural history, we reference the date of filing listed in the Petition for Habeas Corpus. (Doc. 1, at 3).

3

appointed PCRA counsel, filed an appeal to the Superior Court which affirmed the decision of the trial court, denying Williams relief.[2] (Doc. 18-41). A Petition for Allowance of Appeal was filed on October 18, 2019, (Doc. 41), and denied by the Supreme Court on March 24, 2020. (Doc. 42).

Thereafter, Williams filed the instant habeas corpus petition on June 3, 2020. (Doc. 1). A brief followed, raising five grounds that Williams believes entitle him to relief. (Doc. 11). On this score, he alleges five instances of trial counsel's ineffectiveness, in that counsel allegedly made significant errors in the admission of [Williams'] prior police record, failed to call a potential alibi witness and object to testimony that no witness existed, acquiesced to a full reading of co-defendant Richard Cannon's trial information, failed to move to suppress custodial statements, and failed to disclose a conflict of interest. As he concedes that three of his claims are at least partially unexhausted, Williams also argues that PCRA counsel was ineffective for failing to raise these claims. The respondent filed an answer to the petition with accompanying memorandum on June 26, 2021. (Doc. 18). The petitioner filed a brief in reply on July 29, 2021 and, with leave of the Court, an amendment to the petition on August 25, 2021. (Doc. 24). On October 12, 2021, the respondent filed a response to the amended petition.[3] Thus, the petition is ripe for resolution.

(Doc. 30 at 3-5).

## III. STANDARDS OF REVIEW

The statutory authority of federal courts to issue habeas corpus relief for persons in

state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and

---

[2] The Superior Court opinion was split 2-1. The dissenting judge would have granted a new trial on the issue of Williams' trial counsel introducing evidence of his prior arrests. This claim is raised in the instant habeas petition and is addressed in the Report and Recommendation.

[3] To the extent that the respondent alleges the untimeliness of the amended petition, we reject such claims. The respondent lodged no objection to the motion to amend until its response filed on October 12, 2021, a full 48 days after the motion to amend was granted by this Court. The respondent's response filed October 12, 2021 shall be treated as a response to the amended petition, thus making this petition ripe for disposition.

Effective Death Penalty Act of 1996 ("AEDPA").  A habeas corpus petition pursuant to §

2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his

confinement.  *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).  "[I]t is not the province of

a federal habeas court to reexamine state-court determinations on state-law questions."

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Rather, federal habeas review is restricted

to claims based "on the ground that [petitioner] is in custody in violation of the Constitution

or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.

### a. Review of a Report and Recommendation

When objections to a magistrate judge's Report and Recommendation are filed, the

court must conduct a de novo review of the contested portions.  *Sample v. Diecks*, 885 F.2d

1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)).  This only applies, however, to

the extent that a party's objections are both timely and specific; if objections are merely

"general in nature," the court "need not conduct a de novo determination."  *Goney v. Clark*,

749 F.2d 5, 6-7 (3d Cir. 1984).  Indeed, the Third Circuit has instructed that "providing a

complete de novo determination where only a general objection to the report is offered

would undermine the efficiency the magistrate system was meant to contribute to the

judicial process."  *Id.* at 7.  When conducting a de novo review, the court may accept, reject,

or modify, in whole or in part, the factual findings or legal conclusions of the magistrate

judge.  *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F.Supp. 736, 738 (M.D.Pa. 1993).

Uncontested portions of the Report and Recommendation may be reviewed at a standard

determined by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749

F.2d at 7.  At the very least, the court should review uncontested portions for clear error or

manifest injustice.  *See, e.g., Cruz v. Chater*, 990 F.Supp 375, 376-77 (M.D.Pa. 1998).

### b. Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies have

been exhausted, or there is an absence of available state corrective process, or

circumstances exist that render such process ineffective to protect the rights of the

applicant.  *See* 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on

principles of comity in order to ensure that state courts have the initial opportunity to review

federal constitutional challenges to state convictions.  *See Werts v. Vaughn*, 228 F.3d 178,

192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the

State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845

(1999).[4]  Respect for the state court system requires that the petitioner demonstrate that the

claims in question have been "fairly presented to the state courts."  *Castille v. Peoples*, 489

U.S. 346, 351 (1989).  To "fairly present" a claim, a petitioner must present its "factual and

---

[4] In Pennsylvania, pursuant to Order 218 of the Pennsylvania Supreme Court, review of criminal
convictions and post-conviction relief matters from the Pennsylvania Supreme Court is discretionary and
"unavailable" for purposes of exhausting state court remedies under § 2254.  *Lambert v. Blackwell*, 387
F.3d 210, 233 (3d Cir. 2004).  Thus, to exhaust state remedies, a Pennsylvania prisoner need appeal only
to the Pennsylvania Superior Court.

legal substance to the state courts in a matter that puts them on notice that a federal claim

is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999); *see also*

*Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly

presented when a petitioner presents the same factual and legal basis for the claim to the

state courts).  While the petitioner need not cite "book and verse" of the federal Constitution,

*Picard v. Connor*, 404 U.S. 270, 278 (1971), he must "give the State the 'opportunity to pass

upon and correct' alleged violations of its prisoners' federal rights" before presenting those

claims here.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard*, 404 U.S. at 275).

### c. Merits Standard

Once a court has determined that the exhaustion requirement has been met and,

therefore, that review on the merits of the issues presented in a habeas petition is

warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d).  Section 2254(d)

provides, in pertinent part, that an application for a writ of habeas corpus premised on a

claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the Supreme Court of the
> United States; or
>
> (2) [the decision] was based on an unreliable determination of the facts in light
> of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is not

sufficient for the petitioner to show merely that his interpretation of Supreme Court

precedent is more plausible than the state court's; rather the petitioner must demonstrate

that Supreme Court precedent requires the contrary outcome. *Matteo v. Superintendent*,
171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court
decision to be an unreasonable application of federal law if the decision, "evaluated
objectively and on the merits, resulted in an outcome that cannot reasonably be justified
under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a
state court's findings of fact are correct. A petitioner may only rebut this assumption with
clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322,
341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual
issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual
decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir.
2005). This presumption of correctness applies to both explicit and implicit findings of fact.
*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner
"must clear a high hurdle before a federal court will set aside any of the state court's factual
findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination
should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational
jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C.
§ 2254(d)(2); *Porter v. Horn*, 276 F.Supp.2d 278, 296 (E.D.Pa. 2003); *see also Torres v.
Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316

(1979). "This provision essentially requires the district court to step in the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F.Supp.2d 354, 364 (M.D.Pa. 2004) (citing 28 US.C. § 2254(d)(2) and (f)[5]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F.Supp.2d at 296; *see also Williams v. Taylor*, 529 U.S.C. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F.Supp.2d at 296; *see also Williams* 529 U.S. at 408-09.

In addition to satisfying either prong of § 2254, a petitioner must also satisfy the test announced by the Supreme Court in *Brecht v. Abrahamson*, which held that habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" 507 U.S. 619, 637 (internal citations and quotations omitted); *see also Brown v. Davenport*, 2022 WL 1177498, at *3 (U.S. April 21, 2022). To satisfy *Brecht*, a state prisoner must demonstrate that the trial error "had substantial or injurious effect or influence in determining the jury's verdict." *Id.* "[A] federal court must

---

[5] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

*deny* relief to a state habeas petitioner who fails to satisfy either this Court's equitable precedents or AEDPA.  But to *grant* relief, a court must find that the petitioner has cleared both tests."  *Brown*, 2022 WL 1177498, at *9.

### d. Ineffective Assistance of Counsel

The test for ineffective assistance of counsel is a well-settled and firmly established one containing two components.  "First the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.*

The two-pronged test established in *Strickland* "qualifies as 'clearly established Federal law'" for purposes of the AEDPA.  *See Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)).  Therefore, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decisions involved an unreasonable application of *Strickland* or are based on an unreasonable determination of the facts.  *See Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005).  Moreover, Pennsylvania's three-pronged test for

ineffective assistance claims, *see Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975-77 (1987), is not contrary to *Strickland*.  *See Jacobs*, 395 F.3d at 107 n.9.

There is a "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  "The question 'is not whether a federal court believes the state court's determination' under *Strickland* 'was incorrect but whether [it] was unreasonable – a substantially higher threshold."  *Id.* (citing *Schiro v. Landrigan*, 550 U.S. 465, 473 (2007)). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## IV. ANALYSIS

Williams argues that his habeas petition should be granted on grounds that his "[c]ounsel unquestionably performed deficiently in multiple respects" and that "on this record, prejudice is established."  (Doc. 36 at 31).  Williams asserts multiple objections to the R&R, each of which the Court will address in turn.

### a.  Ineffective Assistance of Counsel Claim Regarding Allegedly Involuntary Statements Williams Made to Law Enforcement

For the first time in his § 2254 petition, Williams raises two related ineffective assistance of counsel claims relating to his trial counsel's failure to move to suppress allegedly involuntary custodial statements made by Williams and counsel's subsequent

failure to request a jury instruction related to the voluntariness of those statements. As these claims are "wholly unexhausted and now procedurally defaulted," the claims must be reviewed pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2010).

Pursuant to § 2254, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i); *see also Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004) ("[H]abeas proceedings are not the appropriate forum … to pursue claims of error at the PCRA proceeding.") *Holman v. Gillis*, 58 F.Supp.2d 587, 597 (E.D.Pa. 1999) ("[A] claim of ineffective assistance of PCRA counsel is not cognizable in a federal habeas corpus petition."). The Sixth Amendment right to counsel does not extend to habeas proceedings. *Coleman v. Thompson*, 501 U.S. 722, 750, 755 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).

The Supreme Court has qualified *Coleman* by recognizing a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause to excuse procedural default. *Martinez*, 566 U.S. at 9. Specifically, *Martinez* holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* To successfully invoke the *Martinez* exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," *id.* at 14; and that petitioner has "no counsel"

or "ineffective" counsel during the initial phase of the state collateral review proceeding. *Id.* at 17; *see also Glenn v. Wynder*, 743 F.3d 402, 410 (3d Cir. 2014).

The Magistrate Judge determined that the procedural default for Williams' unexhausted ineffective assistance claims cannot be excused under *Martinez* because his claims are without merit. (*Id.* at 30). According to the Magistrate Judge, "trial counsel's performance did not fall below [an] objective standard of reasonableness" and Williams "has not demonstrated that trial counsel was aware of any basis of suppression" for his allegedly involuntary statements made to police. (*Id.*). As such, the Magistrate Judge concluded that Williams is not entitled to relief on this ground because he "has not demonstrated cause to excuse the procedural default under *Martinez.*" (*Id.* at 32-33).

Williams objects to the Magistrate Judge's finding because his "conclusion that *Martinez*' substantiality requirement poses a 'high standard' is inconsistent with Supreme Court precedent." (Doc. 36 at 8). Williams also asserts that "*Martinez* review is available for a claim of trial counsel ineffectiveness that was ineffectively not presented in initial PCRA proceedings." (*Id.* at 6). Upon review, the Court is satisfied that the Magistrate Judge properly applied the correct law, in accordance with Supreme Court precedent, in his analysis of Williams' unexhausted, procedurally defaulted ineffective assistance of counsel claims related to an allegedly involuntary statement Williams made to police. The Magistrate Judge correctly evaluated Williams' claims under *Martinez*; accordingly, the Court will overrule Williams' objection.

13

In addition to his objection to the legal standard used by the Magistrate Judge, Williams objects to the legal conclusion reached by the Magistrate Judge.  Williams argues that his trial counsel "had a basis to move to suppress" because there is "no evidence of [a *Miranda*] waiver."  (Doc. 36 at 29).  According to Williams, "[w]hen a statement is allegedly taken, and there is neither a signed waiver of *Miranda* warnings, nor even testimony that the defendant waived his *Miranda* rights (*see* NT 690: "Q: And after advising him of those rights did you and Corporal Achey interview Eddie Williams?  A: We did."), there is a basis to move to suppress." (*Id.*).  Williams also objects to the Magistrate Judge's finding that Williams suffered no prejudice from trial counsel's failure to move to suppress Williams' statements to Leahy and failure to request a jury instruction on the voluntariness of the statements.  (*Id.* at 30).

This Court determines that Williams' objections are without merit.  The testimony referred to by Williams as "evidence" that his statement was taken without securing a *Miranda* waiver does not support his claim.  Leahy's agreement that he interviewed Williams with Corporal Achey "after advising him of his rights" does not support the proposition that Williams' never waived his rights, nor is it a statement from which this Court can extrapolate that Williams' trial counsel had a basis to suppress Williams' statements made to Leahy. The Court agrees with the Magistrate Judge's analysis in which he states, "[o]ur reading of the testimony, however, is that Leahy was asked whether he followed the standard process of *Miranda*, and he indicated that he had." (Doc. 30 at 30).

14

Moreover, "the record indicates that, although [Williams'] does deny waiving his *Miranda* rights, he also denies giving police a statement at all, saying Chief Leahy either lied or made up his testimony." (*Id.* at 31; Doc. 18-14 at 78). This Court agrees with the Magistrate Judge that, "given Williams' insistence that the statement was never made, there is nothing in the record to indicate that trial counsel had even an arguable basis for filing a motion to suppress Williams' statements to Leahy" based on the alleged lack of *Miranda* waiver, and it was therefore "reasonable for him to decline to do so." (Doc. 30 at 31).

Finally, Williams failed to demonstrate that he suffered prejudice from Chief Leahy's testimony such that suppression of any part of his testimony would have made a difference in the outcome of his trial. (*See id.* at 32). The Court agrees with the Magistrate Judge's conclusion that "Leahy's testimony largely aligns with Williams' version of events at trial" and Leahy's testimony "was far from the most inculpatory evidence leveled against the petitioner." (*Id.*). In light of the weight of evidence presented at trial, it cannot be said that Williams suffered prejudice from his trial counsel's failure to move to suppress allegedly involuntary statements Williams made to Leahy or to request a jury instruction related to the voluntariness of the statements.

Williams has failed to present actual evidence that demonstrates his statements to Chief Leahy were involuntary, and this Court, like the Magistrate Judge, "decline[s] to infer from this testimony that Leahy proceeded to interview Williams without a waiver of his rights[.]" (*Id.* at 30-31). Therefore, Williams' objection will be overruled, and the Court will

15

adopt the Magistrate Judge's recommendation that, because Williams' claim of ineffective

assistance of trial counsel on this issue is without merit, *Martinez* does not excuse its

procedural default.  Therefore, Williams is not entitled to relief on this ground.

### b. Ineffective Assistance Claim Regarding Evidence of Williams' Prior

### Criminal Record and Other Bad Acts

In his PCRA petition, Williams raised an ineffective assistance claim based on trial

counsel asking Williams about his prior arrest record on direct examination.  He now adds

two additional bases to this claim, namely that trial counsel was ineffective for failing to

object to the introduction of false pedigree information and for stipulating to the admission of

convictions older than 10 years.  (Doc. 11 at 16-33).  Williams concedes these claims are

unexhausted.  (*Id.* at 31).  The Magistrate Judge evaluated Williams' additional claims of

ineffective assistance in his R&R and reasoned that Williams "has incorporated these

grounds within claims that had already been decided on the merits of the state court, we

consider the structure of his brief to be an invitation to consider his newly asserted

subclaims against the backdrop of decisions rendered by the state court." (Doc. 30 at 36

n.9).[6]  Like the Magistrate Judge, this Court will also consider Williams' newly raised

---

[6] Williams objects to the Magistrate Judge's "application of deferential review to the unexhausted portions of this Ground" and asserts that the unexhausted portions of this claim should have been "reviewed through the prism of *Martinez*," with no deference given to state court decisions.  (Doc. 36 at 16-17).  The Magistrate Judge noted that Williams himself "invite[d] the Court to consider these issues together." (Doc. 30 at 37 (quoting Doc. 23 at 19)).  The Magistrate Judge "acknowledge[d] that the petitioner has not fully exhausted the entirety of [this claim] in state court," but "nevertheless consider[ed] this ground as a whole, as the state court's analysis of this ground applies with equal weight to the newly raised subclaims." (*Id.*).  Williams' refers to his newly raised allegations of ineffective assistance as

subclaims in its analysis of Williams' ineffective assistance claim based on trial counsel

asking Williams about his arrest record on direct examination.

Ultimately, the Magistrate Judge denied Williams' claim of ineffective assistance of

trial counsel on these grounds, explaining:

> Williams has now added that the failure of trial counsel to object to the testimony of Chief Leahy about his "numerous aliases," dates of birth, and social security numbers (false pedigree information), and his stipulation to the admission of *crimen falsi* prior convictions older than ten years were unreasonable trial strategies that further prejudiced his proceeding. Although the Superior Court did not directly address these two subclaims, they did note that "it was a reasonable defense strategy not to hide from appellant's past but to confront it head-on." (Doc. 18-41, at 7). We find that these two alleged errors were supported by the same strategy that the state court found to be reasonable. Even considering them cumulatively, as the petitioner asks us to do under *Strickland*, we cannot find that, but for these alleged errors, there is a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different had this evidence not been included. Under the doubly deferential standard we are to apply, the admission of the petitioner's police record, including previous convictions for robbery and 14 false aliases, were unlikely to have so undermined the truth-determining process that no reliable finding of guilt could have taken place, particularly given the litany of evidence presented against defendant, including an in-court identification by the victim.

(Doc. 30 at 40-41).

Williams objects to the Magistrate Judge's finding that this claim is without merit.

(Doc. 36 at 9-19). According to Williams, "[t]he Superior Court's finding that counsel's

---

"subclaims" and states that they are all "related to the looming attacks on [Williams'] credibility." (Doc. 23 at 17). Because the unexhausted portions of Williams' first ineffective assistance of counsel claim are so intertwined with the exhausted portion of the claim, the Court finds that the Magistrate Judge's decision to evaluate the entire claim as a whole was reasonable; thus the Court will overrule Williams' objection.

strategy was motivated by a desire to provide the jury with inadmissible evidence so it could 'try to separate in their mind[s] their personal feelings as opposed to what they feel legally' is literally hard to understand" and "suggests that counsel wanted the jury to have a good dose of inadmissible evidence so that it would not permit its personal feelings about this evidence to prevent it from doing its job of deciding this case on the law." (*Id.* at 10). Williams argued that the Magistrate Judge's "acceptance of this purported strategy flies in the face of abundant authority that prevents crediting of such *post-hoc* explanations that are unsupported by the record." (*Id.* at 11).

A defendant seeking to prove his attorney's performance was deficient faces a heavy burden as the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 455 F.3d 671, 681-82 (3d Cir. 2005); *see also Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). In evaluating whether trial counsel's performance was deficient, the Court must defer to counsel's tactical decisions, avoid "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness. *See Strickland*, 466 U.S. at 689.

18

Although Williams argues that the state courts and the Magistrate Judge engaged in "*post-hoc* explanations that are unsupported by the record," this is inaccurate. At the PCRA hearing, Williams' trial counsel explained that "[i]t was our plan from the beginning not to hide his background" and "I told him upfront, you know, that we're going to have to acknowledge that. You know, you have this background and that's what you were there for and what you were doing and what not, and try to separate in their mind their personal feelings as opposed to what they feel legally." (Doc. 18-32 at 109). Williams' trial counsel explained his trial strategy from his perspective at the outset of the trial and his testimony from the PCRA hearing assisted reviewing courts with "reconstruct[ing] the circumstances of counsel's challenged conduct" while eliminating the "distorting effects of hindsight." *See Strickland*, 466 U.S. at 689. In agreement with the R&R, this Court finds that trial counsel's strategy "not to hide from [Williams'] but to confront it head-on," was reasonable.

Furthermore, the Court agrees with the R&R and the state court that Williams was not prejudiced by the introduction of the evidence of his arrest record, flight from police, and his use of false identifying information. On the contrary, preclusion of this evidence would not have led to a different result at trial; thus, the Court finds that Williams was not prejudiced by the introduction of this evidence. Williams has failed to show how the exclusion of his prior arrest record, flight from police, and use of false identifying information would have led to a different result in his trial. *See Strickland*, 466 U.S. at 694. The Superior Court summarized the evidence heard by the jury, which established, among other

things, that Williams and the victim were "partners in the drug-dealing business" for years before a falling out, Williams drove to the victim's home with his co-conspirators on the morning of the incident, Williams' flight from the scene of the crime and ensuing police chase, and that Williams' DNA on the gun that was used in the shootings. (Doc. 18-41 at 11-12). On consideration of this evidence against Williams, the Court finds that Williams did not suffer prejudice from his trial counsel's alleged errors asserted in this claim.

The Court cannot say that the "state court's ruling 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Massey v. Superintendent Coal Twp. SCI*, 2021 WL 2910930, at *4 (3d Cir. July 12, 2021) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). The Court does not find that the state court's findings were contrary to clearly established constitutional law, nor were the findings and unreasonable application of the facts in light of the evidence presented. Accordingly, Williams is not entitled to habeas relief on this claim and his objections will be overruled.

### c. Claims Related to Uncalled Witness Matthew Snavely

Williams asserts another ineffective assistance of counsel claim related to trial counsel's failure to investigate and call Matthew Snavely as a witness. The Magistrate Judge determined that this claim is without merit.[7] Williams objects, arguing that the R&R

---

[7] The Magistrate Judge noted that even though Respondent argues Williams failed to exhaust this claim because he failed to raise it in his Petition for Allowance for Appeal to the Pennsylvania Supreme

"all but ignored the trial court's reasoning and came up with its own reasons for why counsel was not deficient for failing to investigate or call this important witness." (Doc. 36 at 21).

In his R&R, the Magistrate Judge reviewed the PCRA court's decision, which found that Williams' trial counsel did not render ineffective assistance for not calling Snavely as a witness and for not cross-examining Leahy more vigorously about Snavely. (Doc. 18-34 at 11-12). The PCRA court explained Williams "failed to demonstrate that Mr. [Snavely] was available and willing to testify as a witness for defense at trial," and explained that Williams' "speculation that Mr. [Snavely]'s testimony would have corroborated his alibi does not establish that the witness' absence at trial was prejudicial as to deny his right to a fair trial." (Id. at 11). The PCRA court also found that trial counsel's cross-examination of Leahy was not ineffective because Williams failed to establish that an alternative strategy presented the opportunity for substantially greater potential for success." (Id. at 11-12). The Superior Court affirmed the PCRA court's dismissal of Williams' ineffective assistance of counsel claim. (Doc. 18-41 at 18).

The Magistrate Judge agreed with the state courts, holding that "we cannot conclude that the state courts' determinations were contrary to law or [ ] based on an unreasonable determination of the facts." (Doc. 30 at 44). According to the Magistrate Judge,

> The portions of police reports included with the petitioner's *pro se* petition indicate that Snavely said he noticed Williams walking to the residence from the Cadillac parked outside when he took his dog out around 0845-0900 on the

---

Court, he treated this claim as exhausted "out of abundance of caution." (Doc. 30 at 42). In accordance with the R&R, this Court will also treat this claim as exhausted.

morning of the shooting.  (Doc. 18-28, at 86; Exhibit L).  He stated that he then
returned to his apartment and was watching TV when he heard commotion and
learned that a shooting had occurred.  (Doc. 18-28, at 70; Exhibit B).  According
to the record, gunshots were reported, and police were dispatched, at 0955
that morning.  (Doc. 18-10, at 29).  Although Snavely's testimony does not
exactly contradict the testimony of Williams, as the respondent argues, neither
does it confirm his alibi that he was outside during the shooting.  On this score,
the PCRA court determined that it was a reasonable trial strategy for counsel
not to call Snavely because "Trial Counsel expressed during the PCRA
Hearing, the concern as to establishing the timeline in support of Defendant's
alibi could undermine his defense altogether." (Doc. 18-34, at 12). Mr. Williams
also testified at the PCRA hearing that, "[Trial Counsel] told me that he wasn't
going to call him to testify at my trial because he was leery of his testimony."
(Doc. 18-32, at 60).  We agree with the PCRA court's determination that trial
counsel's strategy in not calling Snavely was reasonable.

(*Id.* at 45).  The Magistrate Judge also found that "petitioner was not prejudiced by the

failure to call Snavely as witness." (*Id.* at 45-46).

In deciding whether to call Snavely as a witness, Williams' trial counsel explained

that at the time of trial preparation and the trial itself, he had a "problem" with Snavely

because he "could not pinpoint an exact minute or hour as to when he saw [Williams]" and

trial counsel "was just worried about what he might say." (Doc. 18-34 at 92). Defendant

claims that Snavely "would have provided corroboration for the defense that Petitioner was

outside the building at the time of the shooting." (Doc. 36 at 22). The record, however,

does not support this claim. The police report stated that Snavely walked his dogs around

8:45 a.m. and 9:00 a.m. and saw Williams walking outside. (Doc. 18-28 at 86; Doc. 30 at

44). Gunshots were reported and police were dispatched at approximately 9:55 a.m. (Doc.

18-10 at 29; Doc. 30 at 45). This leaves a roughly one-hour gap in time between Snavely

seeing Williams outside the house where the shooting took place and the time gunshots were fired.  As noted by the PCRA court and the R&R, Snavely's testimony that he saw Williams outside about an hour before the shooting would not have corroborated Williams' alibi that he was outside at the time of the shooting.

For the aforementioned reasons, the Court finds that it is reasonable that trial counsel did not call Snavely as a witness due to his concerns over the potential negative impact of Snavely's testimony on Williams' alibi, which is an objectively reasonable decision in light of the facts in the record.  *See Porter v. Administrator of New Jersey State Prison*, 2021 WL 2910944, at *3 (3d Cir. July 12, 2021) ("Based on trial counsel's significant experience, he believed that Adams would have been a poor witness and that attacking Veal's identification of Porter would be more persuasive to the jury.  Such a decision is within the realm of reasonableness and does not violate the dictates of *Strickland*.").  In finding that Williams' trial counsel's decision not to call Snavely as an alibi witness was reasonable and did not render his assistance ineffective, the PCRA court "did not apply the first prong of *Strickland* in an objectively unreasonable manner."  *Id.* ("In concluding that trial counsel's decision not to call [Williams] as an alibi witness was reasonable and not an error 'so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment,' the PCR court did not apply the first prong of *Strickland* in an objectively unreasonable manner." (citing *Strickland*, 466 U.S. at 687)).  The Court finds that

Williams' trial counsel's justification for not calling Snavely as a witness was not unreasonable and, therefore, the Court will overrule Williams' objection.

Williams also objects to the Magistrate Judge's determination that trial counsel's cross-examination of Leahy regarding Snavely was not ineffective. (Doc. 36 at 22). Williams argues that "[t]he trial court's reasoning, adopted by the Magistrate, is another post-hoc rationalization" and "[i]f trial counsel actually was motivated by such fears, he would not have brought up Snavely at all." (*Id.* at 22-23). The Magistrate Judge explained that the PCRA court found that "it was reasonable for trial counsel to bring up the issue of Snavely being on the witness list after Leahy denied the existence of witnesses, but decline to push the issue further, due to his concern about the discrepancy in the timeline undermining the petitioner's alibi altogether." (Doc. 30 at 47). The Magistrate Judge determined that "we cannot conclude that the state court's determinations were contrary to law or [ ] based on an unreasonable determination of facts." (*Id.*).

Upon review, this Court finds that the Magistrate Judge's analysis of Williams' claim for ineffective assistance for his counsel's alleged insufficient cross-examination of Chief Leahy was not objectively unreasonable, nor did it rely on an unreasonable determination of facts. Williams provides no caselaw support for his contention that this conclusion was objectively unreasonable, nor does he make a compelling argument based on the *Strickland* test regarding trial counsel's performance. As such, Williams' objection will be overruled.

In another claim related to Matthew Snavely, Williams argues that Leahy presented false testimony at trial regarding the existence of Snavely, which violated Williams' due process rights. (Doc. 36 at 23-24). According to Williams, "a portion of Leahy's testimony presented what was clearly a false impression that there was no witness that saw Petitioner outside of the apartment alone, at about the time that Petitioner would testify he was retrieving Tone's phone number from his inactive cell phone." (Doc. 11 at 36). Williams' claim arises out of Leahy's testimony at trial, which reads, in relevant part:

[DIRECT]
**Q.** And [Williams] also claimed that there were two witnesses that indicated he was outside when the shooting occurred and South Lebanon Township Police Department actually canvassed the entire neighborhood there knocking on all the doors, correct?

**A.** That's correct, and no witness was found.

...

[CROSS]
**Q.** And you made a comment that on one of the recordings Mr. Williams is heard to say something about a witness that saw him outside. You said there was no such witness. Do you remember that testimony?

**A.** We had no witness come forward, yes.

**Q.** Isn't there a fellow named Matthew Snavely who you interviewed or someone interviewed on your behalf?

**A.** I personally do not recall that individual.

**Q.** You don't remember the name Matthew Snavely, the name that's on the list of witnesses here?

**A.** I do not. I obviously did not interview him.

(Doc. 18-13 at 27, 31-32).  According to Williams, this testimony "left the clear impression –

that was ineffectively not corrected by counsel, nor by the prosecution – that there was no

witness who saw Petitioner outside the building that morning."  (Doc. 36 at 23-24).

Williams' objection is without merit.  Leahy was asked on direct whether any witness

was discovered that supported Williams' contention that "there were two witnesses that

indicated he was outside when the shooting occurred," and Leahy answered that no

witnesses were found.  This is entirely supported by the record, as Snavely saw Williams

outside roughly one hour before the shooting occurred and not at the time of the shooting.

Furthermore, there is no evidence that Leahy interviewed Snavely himself, so there is no

evidence to support Williams' allegation that Leahy provided false testimony.  Accordingly,

the Court overrules Williams' objection to the R&R's conclusion that there was no due

process violation in relation to Leahy's testimony.

### d. Cannon's Criminal Information

Williams claims that he suffered ineffective assistance of counsel for his trial

counsel's failure to object when, after Williams' counsel's opening statement, the trial court

judge read the entirety of the Criminal Information of his co-defendant, Rick Cannon, to the

jury and told them that Cannon "pled guilty to all of these charges and I sentenced him

thereafter."  (Doc. 1 at 12; Doc. 11 at 41-47; *see also* Doc. 18-10 at 21-28; Doc. 18-15 at

74-80).  The trial court judge read Cannon's entire Information to the jury for the first time

after Williams' trial counsel's opening statement to "cure" a "mischaracterization" created by

26

the opening statement, and then read Cannon's Information for a second time in response

to a jury question during deliberations asking for "the stipulation as to what Rick Cannon

pled guilty to."  (Doc. 18-10 at 17-28; Doc. 18-15 at 72-80).  In addition to his ineffective

assistance of counsel claim, Williams claims a Confrontation Clause violation, arguing that

Cannon's Information was testimonial, and he did not have the opportunity to cross-examine

Cannon.  (Doc. 1 at 12; Doc. 11 at 41-47).

In his opening statement to the jury, Williams' trial counsel stated:

Second thing that will make this case a little bit easier for you is that there's one
guy who hasn't really been mentioned.  Well, he's been mentioned, but hardly
mentioned in what you've heard so far and that guy is really pivotal.  That guy's
name is Rick Cannon.  The reason that Mr. Cannon is so pivotal is because
he's already said that he did this.  He wrote down on a piece of paper under
oath, yes, I killed that man.  He stood in this very courtroom, put up his hand
and took an oath and told Judge Kline, yes, I killed that man.  He admitted that
he killed him.  Rick, we already know for an absolute fact that Rick Cannon
killed the man.  So that's going to make it a little easier for you also.

(Doc. 18-9 at 23).  The State did not make a contemporaneous objection but in a sidebar

conference with the trial court judge after opening statements concluded, the State

explained that it "[took] exception" to Williams' counsel's opening because "it's a

mischaracterization of the facts to say that we know for a fact that Rick Cannon is the

person that pulled the trigger because that's not true."  (Doc. 18-10 at 17-18).

As a "curative instruction," the trial court recommended that it "read into the record

what Mr. Cannon pled guilty to" because "that clears the air on the matter."  (*Id.* at 19).  All

parties agreed to the trial court reading Cannon's Criminal Information to the jury and telling

27

the jury that Cannon pleaded guilty to all charges therein. (*Id.* at 19-21). In particular,

Williams' counsel stated "[t]hat's fine," "I agree to that," and "I have no problem with that"

when the trial court judge asked if anyone had objections to the proposed reading of

Cannon's Information. (*Id.*). The trial court explained to the jury:

> At a sidebar there was an objection made to certain characterization[s] of what
> the District Attorney knew or not knew about Rick Cannon, and all parties have
> agreed that Rick Cannon pled guilty before this jurist. I took the guilty plea and
> sentenced him.
>
> So to make it perfectly clear to the jury what he did and what he alleged he pled
> guilty to, I'm going to read the entire Information concerning Rick Cannon, and
> I want you to just slowly listen carefully to it as I go through. All Counsel has
> agreed that he pled guilty to all of these charges, and I sentenced him
> thereafter. The amount of sentence is not a relevant factor here, but the fact
> that he pled guilty to these. So take your time, and we will go through it.

(*Id.* at 21). The trial court proceeded to read the entirety of Rick Cannon's twenty count

Criminal Information to the jury and told them that Cannon "pled guilty to all of these

charges, and I sentenced him thereafter." (Doc. 18-10 at 21-28). Nine charges in Cannon's

Information specifically named Williams as a co-conspirator, including Count 4, Criminal

Conspiracy, Violation of the Drug Act; Counts 5 and 6, Criminal Conspiracy, Criminal

Homicide; Counts 9 and 10, Criminal Conspiracy to Commit Aggravated Assault; Counts 13

and 14, Criminal Conspiracy, Aggravated Assault; Count 17, Criminal Conspiracy to Commit

Robbery; and Count 20 Criminal Conspiracy to Commit Flight to Avoid Apprehension. (*Id.*).

Most significantly, Counts 5 and 6 read:

> Count 5: Criminal Conspiracy, Criminal Homicide: In that the Defendant acting
> as a principal and/or accomplice with the intent of promoting or facilitating the

commission of the crime of Criminal Homicide unlawfully did agree with Akeita Harden and/or *Eddie Williams* that they or one or more of them would engage in conduct which constitutes such a crime or an attempt or solicitation to commit such a crime and did an overt act in the pursuance thereof. The Defendant did fire a gun at Marcus Antonio Ortiz striking him with a bullet.

Count 6: Criminal Conspiracy, Criminal Homicide: In that the Defendant acting as a principal and/or accomplice with the intent of promoting or facilitating the commission of the crime of Criminal Homicide unlawfully did agree with Akeita Harden and/or *Eddie Williams* that they or one or more of them would engage in conduct which constitutes such a crime or an attempt or solicitation to commit such a crime and did an overt act in pursuance thereof. The Defendant did fire a gun at Keith Crawford striking him in the head.

(*Id.* at 23 (emphasis added)).

### *d(i). Ineffective Assistance of Counsel*

The PCRA court determined that Williams' ineffective assistance claim for counsel's

failure to object to the trial court's reading of Cannon's entire Criminal Information to the jury

was without merit. (Doc. 18-32 at 14-15). The PCRA court explained:

With regard to an analysis of Defendant's claim for ineffective assistance of counsel, we find that the argument fails. While a motion in limine seeking to restrict the language of the information disclosed to the jury may well have been submitted and entertained by the Court, it is by no means a certainty that such motion would have succeeded. Moreover, trial strategy does not have to be successful in order to be effective. Trial Counsel clearly had a reasonable basis for referencing Mr. Cannon's guilty plea to the homicide as this serves to bolster Defendant's alibi. Additionally, in light of the cumulative evidence presented at trial, including the living victim's identification of Defendant, we find that Defendant has failed to show that an alternative offered a substantially greater prospect of success.

(*Id.*). In reviewing the PCRA court's decision, the Magistrate Judge found that "[i]t was not

unreasonable for the PCRA court to determine that trial counsel's strategy of notifying the

jury that Cannon had pled guilty to the murder and providing evidence of that information

the only way he could was within defendant's overall reasonable trial strategy." (Doc. 30 at

56). Thus, the Magistrate Judge concluded that Williams' trial counsel was not ineffective

for his choice of trial strategy or for failure to object to the reading of Cannon's complete

Criminal Information after his opening statement or during jury deliberations. (*Id.* at 57).

This Court respectfully disagrees, and finds that Williams' counsel was ineffective.

As an initial matter, presenting a third-party culpability defense is, in many instances, a

wholly reasonable strategy. In fact, a third-party culpability defense was a reasonable

strategy for Williams' trial counsel to pursue in this case. The problem, however, lies in the

manner in which Williams' counsel executed this strategy. In his opening statement,

Williams' counsel told the jury that Cannon "wrote down on a piece of paper under oath,

yes, I killed that man," "[h]e stood in this very courtroom, put up his hand and took an oath

and told Judge Kline, yes I killed that man," and "we already know for an absolute fact that

Rick Cannon killed the man." (Doc. 18-9 at 23). These statements misrepresent the charge

to which Cannon actually pleaded guilty, as pointed out by the State. As Williams' trial

counsel knew, Cannon pleaded guilty to Criminal Homicide *"as a principal and/or*

*accomplice"* for the conduct that caused the death of Marcus Ortiz. (Doc. 18-10 at 22

(emphasis added)). Williams' counsel's statement that "we know for an absolute fact that

Rick Cannon killed the man" is not true by virtue of the fact that Cannon did not plead guilty

solely as a principal to Ortiz's murder.

30

It was unreasonable for Williams' counsel to patently misrepresent Cannon's guilty plea on the Criminal Homicide charge because Williams' counsel himself knew this was not true. (*See id.* at 18-19). Williams' counsel had copies of Cannon's plea colloquy and Criminal Information readily available at trial, and even provided the trial court judge with his own copy of Cannon's Information so the Court could read it to the jury. (*See id.* at 20; Doc. 18-15 at 70-71). It was unreasonable for Williams' counsel to base his trial strategy on an inaccurate representation of the facts to which Cannon pleaded guilty.

Williams' counsel compounded his unreasonable strategy to misrepresent Cannon's guilty plea when he chose not to object to the trial court's reading of Cannon's entire Criminal Information to the jury, which was done in an attempt to ameliorate the effect of the mischaracterization created by Williams' counsel's opening statement. Instead of objecting to the reading of Cannon's entire Information or requesting that the judge redact any reference to Williams therefrom, Williams' counsel agreed to let the judge read the Information as written. The trial judge asked Williams' counsel more than once if he had any objections to the court reading Cannon's Information and each time, Williams' counsel said "[t]hat's fine," "I agree to that," and "I have no problem with that." (Doc. 18-10 at 19-21). When the jury requested to hear the charges to which Cannon pleaded guilty a second time during jury deliberations, Williams' counsel again agreed to the trial court rereading Cannon's Information. (Doc 18-15 at 69-73).

In neither instance did Williams' counsel object, request a limiting instruction for how the jury should consider the fact of Cannon's guilty plea, request that the trial judge redact any reference to Williams from the Information, or limit the reading of Cannon's Information to only those counts that did not name Williams so as to minimize the negative impact upon him. (*See* Doc. 18-10 at 17-21; Doc. 18-15 at 69-73).  In fact, Williams' counsel testified at the PCRA hearing that it was his "intention … to have Judge Kline read the rest of Mr. Cannon's charges out loud to the jury" because he "wanted the jury to know that Rick Cannon had – had pled guilty." (Doc. 18-32 at 89).

The conclusion reached by the PCRA court that Williams' counsel was not ineffective erroneously assumes the only charge that was read to the jury and that is material to the Court's analysis is Count 1 of Cannon's Information. (*See* Doc. 18-34 at 14 ("Trial Counsel clearly had a reasonable basis for referencing Mr. Cannon's guilty plea to the homicide …"). Count 1 is Cannon's Criminal Homicide charge and reads: "In that the Defendant acting as a principal and/or accomplice unlawfully, intentionally, knowingly, recklessly, or negligently did cause the death of another human being, namely Marcus Antonio Ortiz, to wit: The Defendant did fire a gun at the victim striking him with a bullet." (Doc. 18-10 at 22).  Count 1 does not make any reference to Williams' existence, and would have clarified the mischaracterization created by Williams' counsel's opening.  The Court emphasizes that it would not have been unreasonable for the PCRA court to find that Williams' counsel

pursued a reasonable trial strategy had he agreed to have the trial court judge read only Count 1 of Cannon's Information.

If the only portion of Cannon's Criminal Information that was read to the jury was Count 1, our analysis might well be different.  As discussed above, however, the trial court read Cannon's entire twenty count Information to the jury, nine counts of which name Williams as a co-conspirator, and in two of those counts Williams is alleged to have criminally conspired with Cannon and Akeita Harden to commit Criminal Homicide.  The trial court went beyond clarifying for the jury that Cannon pleaded guilty to Criminal Homicide as a principal and/or accomplice when it proceeded to tell the jury that Cannon pleaded guilty to all twenty counts in the Information, which are the same twenty counts for which Williams stood trial.  It was an unreasonable strategy for Williams' counsel to accede to the trial court judge's method of "cur[ing]" the mischaracterization created by his opening.  It was also an unreasonable application of law to fact for the PCRA court to not consider the fact that the trial court read more than just Count 1 of Cannon's Information and instead read Cannon's entire twenty count Information to the jury in its analysis of Williams' claim.

Williams' counsel himself admitted at the PCRA hearing that "in retrospect, I should have tried to redact the information so to speak so as to have the homicide charge read but not the conspiracy charge read because the conspiracy charge obviously implicates people other than Mr. Cannon" and testified that although he thought "reading the full information was an appropriate thing" at the time, he no longer holds that belief.  (Doc. 18-32 at 91).

Williams' counsel went on to say, "I think that was error on my part not to demand that the conspiracy part of the information not be read.  Not that the information not be read, but that the specific count should have been redacted from the information." (*Id.* at 114).  While it is true that the Court must make "every effort to eliminate the distorting effects of hindsight," *Strickland*, 466 U.S. at 689, the unreasonableness of permitting the trial court to inform the jury about a co-defendant's guilty plea, the terms of which directly implicate Williams, without raising an objection or moving for a new trial or mistrial is obvious.

The Court finds that Williams' counsel was ineffective for his unreasonable trial strategy of creating a mischaracterization of Cannon's guilty plea to the charge of Criminal Homicide and counsel's failure to object, request redactions, or request limiting instructions to the trial court's reading of Cannon's entire Information to the jury to correct the misrepresentation created by counsel's opening statement.  As such, the Court finds that the first prong of *Strickland* is satisfied.

As for the prejudice prong of *Strickland*, this Court finds that Williams has sufficiently established that he was prejudiced by the ineffective assistance of trial counsel described above.  It cannot be said that the other evidence introduced at trial was "so overwhelming, and the prejudicial effect of [Cannon's Information and guilty plea] is so insignificant in comparison, that is it beyond a reasonable doubt" that the two readings of Cannon's Information to the jury was harmless error.  *Schneble v. Florida*, 405 U.S. 427, 430 (1972).

34

The charges for which Williams stood trial are the same charges to which Cannon pleaded guilty. (*See* Doc. 18-8 at 1-3; Doc. 18-10 at 21-28). Having extrinsic evidence about the guilty plea of a co-conspirator named in Williams' Criminal Information encouraged the jury to draw a prejudicial inference that because Cannon pleaded guilty to the charges described in his Information, which were the same charges and factual descriptions contained in Williams Information, that Williams must also be guilty of the same charges. *See United States v. Hansen*, 544 F.2d 778, 780 (5th Cir. 1977) ("[T]here is no need to advise the jury … that someone not in court, not on trial, and not to be tried, has pleaded guilty. The prejudice to the remaining parties who are charged with complicity in the acts of the self-confessed guilty participant is obvious."). This is especially true when considering the fact that nine conspiracy charges to which Cannon pleaded guilty named Williams as a co-conspirator, and Williams himself was on trial for his alleged participation in these same conspiracies. The chances that Williams would be found guilty for Conspiracy to Commit Criminal Homicide, for example, decidedly increased after the jury learned that Cannon agreed that "[Cannon] acting as a principal and/or accomplice with the intent of the crime of Criminal Homicide unlawfully did agree with Akeita Harden and/or Eddie Williams that they or one or more of them would engage in conduct which constitutes such a crime or an attempt or solicitation to commit such a crime and did an overt act in pursuance thereof." (Doc. 18-10 at 23).

Furthermore, the jury sought out the extrinsic information of Cannon's Criminal Information, which was not admitted into evidence, during deliberations. In response to a question by the jury asking if they could "have the stipulation as to what Rick Cannon pled guilty to," which they wanted because "in the closing arguments some of the Attorneys read portions of what he had plead guilty to, not just a list of the charges," (Doc. 18-15 at 73), the trial judge reread the entirety of Cannon's Criminal Information for the jury. The trial judge told the jury before he read Cannon's Information for the first time that the "fact [Cannon] pled guilty to these [charges]" was a "relevant factor" for them to consider. (Doc. 18-10 at 21). During deliberations, the jury clearly considered Cannon's guilty plea in determining Williams' guilt and they apparently agreed that Cannon's plea was a "relevant factor."

The jury learned this extrinsic information from the trial judge and it was not accompanied by a limiting instruction about how the jury should consider the fact of Cannon's plea, and Cannon's Information was not redacted so as to eliminate any reference to Williams' existence. *See United States v. Ofray-Campos*, 534 F.3d 1, 22 (1st Cir. 2008) ("[T]he jury actively sought and received extrinsic information from the trial judge. Here, too, as described above, the information was prejudicial, was probably used by the jury as evidence of the Appellants' guilt, and was unaccompanied by an instruction or any other curative undertaking by the district court."). This makes it all but certain that Rick Cannon's guilty plea was an integral part of their deliberations and they relied on the information they heard in the reading of Cannon's Criminal Information in determining Williams' guilt.

36

On these facts, it is not only clear that Williams was prejudiced by his trial counsel's failure to take any action to limit the negative impact upon Williams, such as objecting to the reading of Cannon's entire Information or requesting that the judge redact Williams' name from the Information, but it is also clear that the PCRA court's determination that Williams did not suffer prejudice was unreasonable.  No fairminded jurist would disagree that the truncated analysis of the PCRA court in failing to consider the full extent of the extrajudicial information revealed to the jury was an erroneous application of the law to the facts.  The extrinsic information about Cannon's Criminal Information and that he pleaded guilty to all charges therein "had [a] substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637; *see also Brown*, 2022 WL 1177489, at *8-9.  Therefore, Williams has satisfied the prejudice prong of *Strickland*.

For the aforementioned reasons, this Court holds that Williams suffered ineffective assistance of trial counsel and that the PCRA court's conclusion to the contrary was an unreasonable application of law to fact with which no fairminded jurist would agree.  This Court finds that Williams' has established that his trial counsel's error had a "substantial and injurious effect or influence" on his trial verdict.  *See Brown*, 2022 WL 1177498, at *8 (quoting *Brecht*, 507 U.S. at 633-34).  Accordingly, Williams has demonstrated that he is entitled to habeas relief pursuant to 28 U.S.C. § 2254.

### d(ii). Confrontation Clause

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." U.S. CONST. amend. VI.  The Confrontation Clause prohibits the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).  The Confrontation Clause "applies to 'witnesses against the accused – in other words, those who 'bear testimony.'" *Id.* at 51.  "'Testimony,' in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* (internal quotations and citations omitted).  "[S]tatements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial are testimonial." *United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005).  Testimonial statements include "material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similarly prejudicial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements … contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (quoting *Crawford*, 541 U.S. at 51-52); *see also United States v. Moreno*, 809 F.3d 766, 773-74 (3d Cir 2016)).  To determine whether a Confrontation Clause violation occurred, a court should first "determine whether the

contested statement by an out-of-court declarant qualifies as testimonial" and if the

statement was testimonial, "the Confrontation Clause requires 'unavailability and a prior

opportunity for cross-examination.'" *United States v. Berrios*, 676 F.3d 118, 127 (3d Cir.

2012) (quoting *Crawford*, 541 U.S. at 68).

In *Hemphill v. New York*, 142 S.Ct. 681 (2022), the Supreme Court held that the trial

court's admission of portions of a non-testifying third party's plea allocution transcript to

correct a "misleading impression" created by the defendant's opening statement violated the

Confrontation Clause. 142 S.Ct. at 686. The Court explained:

> If *Crawford* stands for anything, it is that the history, text, and purpose of the
> Confrontation Clause bar judges from substituting their own determinations of
> reliability for the method the Constitution guarantees. The Clause "commands,
> not that evidence be reliable, but that reliability be assessed in a particular
> manner: by testing in the crucible of cross-examination." *Crawford*, 541 U.S.,
> at 61, 124 S.Ct. 1354. It "thus reflects a judgment, not only about the
> desirability of reliable evidence (a point on which there could be little dissent),
> but about how reliability can best be determined." *Ibid*. "[A] mere judicial
> determination" regarding the reliability of evidence is no substitute for the
> "constitutionally prescribed method of assessing reliability." *Id.*, at 62, 124 S.Ct.
> 1354. The upshot is that the role of the trial judge is not, for Confrontation
> Clause purposes, to weigh the reliability or credibility of testimonial hearsay
> evidence; it is to ensure that the Constitution's procedures for testing the
> reliability of that evidence are followed.
>
> The trial court here violated this principle by admitting unconfronted, testimonial
> hearsay against Hemphill simply because the judge deemed his presentation
> to have created a misleading impression that the testimonial hearsay was
> reasonably necessary to correct. For Confrontation Clause purposes, it was
> not for the judge to determine whether Hemphill's theory that Morris was the
> shooter was unreliable, incredible, or otherwise misleading in light of the State's
> proffered, unconfronted plea evidence. Nor, under the Clause, was it the
> judge's role to decide that this evidence was reasonably necessary to correct

that misleading impression.  Such inquiries are antithetical to the Confrontation
Clause.

*Id.* at 691-92.

Here, the PCRA court rejected Williams' Confrontation Clause claim and explained:

The crux of Defendant's contention seems to be that following the employment
of the above-stated tactic, the Court read Mr. Cannon's information to the jury
following opening statements and upon later request during deliberations.
Defendant somehow conflates this argument, though admittedly at Trial
Counsel's own behest, into a violation of his Confrontation Clause rights.

We reject Defendant's argument for several obvious reasons.  First, the
information to which Mr. Cannon pled guilty never specifically or inferentially
identifies Defendant in the role of principal or accessory.  Next, at trial, the
remaining living victim of the crime specifically identified Defendant as the
person who shot him.  (Trial N.T. 543).  Finally, the charges listed in Mr.
Cannon's information were the same charges on which Defendant was being
tried and the information was not entered into evidence.  Therefore, we find
that the reading of information to which Mr. Cannon pled guilty, which in itself
was corroborative of Trial Counsel's reference to Mr. Cannon's admission of
guilt, did not violate Defendant's Confrontation Clause rights.

(Doc. 18-32 at 13-14 (footnote omitted)).

In his R&R, the Magistrate Judge agreed with the state court that the trial court did

not violate Williams' right to confrontation when it read Cannon's Criminal Information to the

jury and informed them that Cannon pleaded guilty to all charges therein.  (Doc. 30 at 52-

55).  Relying on caselaw from the Fourth and Ninth Circuits, the Magistrate Judge

reasoned, "[o]ther circuits have found that the admission of records such as guilty charges

does not violate the Confrontation Clause because such records are not testimonial." (*Id.* at

54).  In reaching this conclusion, the Magistrate Judge noted that "[t]he counts to which Mr.

Cannon pleaded guilty did not describe the factual basis for the plea or serve a

prosecutorial function," nor were they "created for the purpose of being introduced at trial."

(*Id.* at 54-55).

Williams objected to the R&R, arguing "the jury was told that Cannon pled guilty and

then it was told the factual allegations, *i.e.* the Information, to which he agreed he was

guilty.  There is no way to view this as anything other than a statement of Cannon, that was

not subject to cross examination."  (Doc. 36 at 25).  According to Williams, "the Magistrate's

recommendation, that the use of the information followed by attribution of the facts

contained therein to co-defendant Cannon, did not implicate the Confrontation Clause is

simply wrong."  (Doc. 44 at 4).

The focus of this Court's Confrontation Clause inquiry is whether Williams' right to

confrontation was violated by the trial court judge reading Cannon's Criminal Information to

the jury and telling them "he pled guilty to all of these charges and I sentenced him

thereafter."  The Court must first determine whether the extrinsic information provided to the

jury by the trial court judge is testimonial.  The "primary purpose" of the judge reading

Cannon's Information and telling the jury that he pleaded guilty to the charges therein was

to "make it perfectly clear … what [Cannon] did and what he alleged he pled guilty to."

(Doc. 18-10 at 21).  Reading only Count 1 would have corrected the mischaracterization

created by Williams' opening statement and that the trial judge felt the need to "cure," and

Count 1 does not make any reference to Williams' existence whatsoever.  (Doc. 18-10 at

17-19). Instead, the trial court went far beyond reading only Count 1 and saw fit to read all twenty counts of Cannon's Information, nine counts of which specifically name Williams as a co-conspirator. (*Id.* at 21-28).

In *Bruton v. United States*, 391 U.S. 123 (1968) the Supreme Court held that a defendant is deprived of his Sixth Amendment right to confrontation when his non-testifying co-defendant's confession naming him as a participant in the crime is introduced at their joint trial, despite an instruction that the jury consider the statement only as to the co-defendant. 391 U.S. at 135-36. The Supreme Court refined the *Bruton* rule in *Richardson v. Marsh*, 481 U.S. 200 (1987), recognizing that "the Confrontation Clause is not violated by the admission of a non-testifying codefendant's confession with a proper limiting instruction when ... the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson*, 481 U.S. at 211.

While Cannon's Information and the fact of his guilty plea may not be testimonial; nonetheless, the situation with which the Court is faced falls squarely within the purposes of the Confrontation Clause and the rules announced in *Bruton* and *Richardson*. By its very nature, the Sixth Amendment's right to confrontation is designed to prevent the type of injustice suffered by Williams. Indeed, there exists a fundamental similarity between the purposes of the Sixth Amendment, as explained by the Supreme Court, and the situation with which the Court is faced here. In *Crawford*, the Supreme Court announced:

> Admitting statements deemed reliable by a judge is fundamentally at odds with
> the right of confrontation. To be sure, the Clause's ultimate goal is to ensure

42

> reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.
>
> …
>
> Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with a jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes.

541 U.S. at 61-62. The trial court judge's reading of Cannon's Information and telling the jury "he pled guilty to all of these charges and I sentenced him thereafter" deprived Williams of the Confrontation Clause's command that "evidence be reliable" and that "reliability be assessed … by testing in the crucible of cross-examination." *Id.* at 61. Williams did not have an opportunity to cross-examine Cannon about his plea in violation of the Confrontation Clause to the Sixth Amendment.

Furthermore, the trial judge's reading of Cannon's entire twenty count Criminal Information, coupled with the judge's statement that Cannon "pled guilty to all of these charges, and I sentenced him thereafter," is tantamount to admitting a confession of a co-defendant, bringing it under the purview of *Bruton* and *Richardson* and carries the concomitant requirement that Cannon's Information be redacted to eliminate any reference to Williams. Neither the trial court nor Williams' counsel, however, took any measure to comply with the rules announced in *Bruton* and *Richardson* to eliminate Williams' name, as well as any reference to his existence, from Cannon's Information read aloud to the jury.

43

The trial judge telling the jury that Cannon "pled guilty to all of these charges and I sentenced him thereafter" would surely be understood by the jury as Cannon having admitted guilt, thus bringing the Court's acknowledgement of Cannon's statement of guilt so near to the introduction of a confession as to make the two indistinguishable.[8]

As *Bruton* warned, a jury "cannot determine that a confession is true insofar as it admits that A has committed criminal acts with B and at the same time effectively ignore the inevitable conclusion that B has committed those same criminal acts with A." *Bruton*, 391 U.S. at 131 (internal quotation marks omitted).  So, too, here the trial court's presentation of Cannon's guilty plea and affirmation that Cannon pleaded guilty before him to the same criminal acts with which Williams was charged presented the same "inevitable conclusion" condemned by *Bruton* that Williams committed the same criminal acts as Cannon.  Williams was mentioned by name as a co-conspirator in nine counts of Cannon's Information and the jury knew that Cannon pleaded guilty to those charges, thereby increasing the probability that the jury would draw a prejudicial inference and find Williams guilty by association, a danger that the Sixth Amendment right to confrontation is intended to prevent.

---

[8] Not only would the jury understand Cannon's guilty plea as a confession to the criminal charges themselves, but they also would have understood Cannon's guilty plea as Cannon's agreement with, or admission to, the factual descriptions of each charge, nine of which reference Williams by name. *See United States v. Broce*, 488 U.S. 757, 763 (1989) ("A guilty plea is more than a confession which admits that the accused did various acts.  It is an admission that he committed the crime charged against him.  By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." (internal quotations and citations omitted)).

The Magistrate Judge stated that it was not "unreasonable for the PCRA court to determine that trial counsel's strategy of notifying the jury that Cannon had pled guilty to the murder and providing evidence of that information the only way he could was within defendant's overall reasonable trial strategy." (Doc. 36 at 56; Doc. 18-34 at 13-15). This justification for the trial court's reading of Cannon's Information and Williams' counsel's failure to object is shortsighted. "[V]iable alternatives [existed]" for Williams' counsel, such as objecting to the trial court's reading of Cannon's entire Information or requesting that the conspiracy charges be redacted so eliminate any reference to Williams. *See Bruton*, 391 U.S. at 133-34 ("Where viable alternatives do exist, it is deceptive to rely on the pursuit of truth to defend a clearly harmful practice.").

Closing arguments make it clear that the State encouraged the jury to make this prejudicial inference and use Cannon's guilty plea, which was not admitted into evidence, to support a guilty verdict. First, Williams' counsel again misrepresented Cannon's guilty plea in his closing argument in which he stated:

> Rick Cannon shot Mr. Crawford, and he shot Mr. Ortiz, and we know that for one reason, because he, himself, said he did it. The Judge read to you the charges that Mr. Cannon pled guilty to, and I'm going to just read one of them to you, the first one, the most important one, Criminal Homicide.
>
> That the Defendant it does say acting as a principal and/or accomplice, which is standard in this thing, unlawfully, intentionally, knowingly, recklessly or negligently did cause the death of another human being, namely Marcus Ortiz, to wit … did cause the death of Marcus Ortiz, that is to say, the Defendant did fire a gun at the victim striking him with a bullet.

Mr. Cannon came into this courtroom right here and stood right over here. He put up his hand. He faced – he looked Judge Kline right in the eye, and he said, "I did it. That's what I did." And you know, when you give a plea, the Judge, the job of the Judge is to make sure you know what you're doing and you're doing it voluntarily, and Judge Kline did his job. He made sure he knew what he was talking about and knew that he was doing it voluntarily. There's a long series of questions that go on with that, and that was performed in this case. So we know for one thing that Mr. Cannon already pled guilty to killing Marcus Ortiz.

(Doc. 18-16 at 31-32).  The State responded in its closing by telling the jury:

Now, I want to talk to you about something else, and I've got a great deal of respect for both Defense Counsel; but I'm going to suggest that there's some disingenuous comments being made up here previously. You heard from Attorney Fenton that all the evidence has to come from up there, not from down here, from that stand. Told you that multiple times, and then stands down here and says, We know for a fact Rick Cannon pulled the trigger. Did that come from the stand? It didn't. It comes from him telling you that. We don't know that for a fact. That has never been proven or said anywhere in this courtroom despite what he says to you, and it's disingenuous to say otherwise.

What we know is Rick Cannon pled guilty as a principal or accomplice to these crimes. He owned his share of this, okay; but if you want to ascribe great value to Rick Cannon's guilty plea, the next part of that disingenuousness was he didn't tell you everything about what Rick Cannon pled guilty to. He told you the part he wanted you to hear because if you are going to ascribe any importance to Rick Cannon pleading guilty as a principal or an accomplice to the homicide and the shooting, then you better ascribe that same importance to this. Rick Cannon pled guilty to Criminal Conspiracy with Akeita Harden and Eddie Williams to commit homicide. So if they want you to ascribe importance to one, you got to follow along with the other.

(*Id.* at 89-90).

The State advocated for the jury to make substantive inferences of Williams' guilt based on the admitted guilt of Rick Cannon. The mere fact that a co-defendant pleads

guilty to charges in which the defendant is a named co-conspirator cannot be used as

substantive evidence of the defendant's guilt.  *See Bruton*, 391 U.S. t 132 ("A defendant

may be prejudiced by the admission in evidence against a co-defendant of a statement or

confession made by that co-defendant.  This prejudice cannot be dispelled by cross-

examination if the co-defendant does not take the stand."); *United States v. Gaev*, 24 F.3d

473, 476 (3d Cir. 1994) ("It is well established that the plea agreements of co-conspirators

cannot be used as evidence of a defendant's guilt."); *United States v. Gambino*, 925 F.2d

1355, 1363-64 (3d Cir. 1991) ("[I]t is important that the jury understand the limited purpose

of a co-conspirator's guilty plea.  Here, in its final charge, the district court properly

instructed the jury that the guilt of any one person was not substantive evidence of the guilty

of any other person.  We also note that the guilty pleas were not emphasized by the

prosecutor during direct examination, and were not inappropriately emphasized during

closing argument."); *United States v. Dworkin*, 855 F.2d 12, 30 (1st Cir. 1988) ("[A]

defendant is entitled to have the question of his guilt determined upon the evidence against

him, not on whether a codefendant or government witness has been convicted of the same

charge." (internal citations and quotations omitted)).

Finally, the prejudice of the extrajudicial information provided to the jury by the trial

court judge was heightened when the jury asked for "the stipulation as to what Rick Cannon

pled guilty to."  (Doc. 18-15 at 73).  With the agreement of all counsel, including Williams'

counsel, the trial judge "reread each and every count that [Cannon] pled guilty to."  (*Id.*).  As

47

discussed above, this request makes it clear that the jury relied on Cannon's guilty plea during their deliberations over Williams' guilt, and considered Cannon's admitted guilt a substantive factor in their deliberations, which they were told was permissible by the trial court judge, Williams' counsel, and the State.  (Doc. 18-10 at 21 ("The amount of sentence is not a relevant factor here, but the fact that he pled guilty to these" [is a relevant factor.]); Doc. 18-16 at 31-32 (showing that during his closing argument, Williams' counsel told the jury Cannon already pleaded guilty and they should consider that in their deliberations); Doc. 18-16 at 90 ("[The State's closing argument:] He told you the part he wanted you to hear because if you are going to ascribe any importance to Rick Cannon pleading guilty as a principal or accomplice to the homicide and the shooting, then you better ascribe that same importance to this.  Rick Cannon pleaded guilty to Criminal Conspiracy with Akeita Harden and Eddie Williams to commit homicide. So if you ascribe importance to one, you got to follow that along with the other.")).

As explained by the First Circuit, "a jury's 'exposure to extrinsic information deprives a criminal defendant of the protections of the Sixth Amendment,' – *e.g.*, 'his right of confrontation, of cross-examination, and of counsel,' – and that '[t]he jury's exposure to extrinsic facts is especially troubling when the trial judge is the source of the information.'" *United States v. Morosco*, 822 F.3d 1, 12 (1st Cir. 2016) (quoting *Ofray-Campos*, 534 F.3d at 18.  This is undoubtedly the situation with which the Court is faced.  The trial court exposed the jury to extrinsic information about Williams' co-defendant that was not cross-

examined in the hopes of "cur[ing]" the mischaracterization from Williams' opening statement. (Doc. 18-10 at 19). Under the Confrontation Clause, it was not "the judge's role to decide that this evidence was reasonably necessary to correct that misleading impression." *Hemphill*, 142 S.Ct. at 692. By reading Cannon's unconfronted and unredacted Criminal Information and telling the jury that Cannon pleaded guilty to all charges therein "simply because the judge deemed his presentation to have created a misleading impression that [this evidence] was reasonably necessary to correct," the trial court violated Williams' right to confrontation. *Id.*

The Court is persuaded that "law and justice" require habeas relief. *Brown*, 2022 WL 1177498, at *9 ("So even a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief." (quoting 28 U.S.C. § 2243)). The PCRA court relied on an "unreasonable determination of the facts" when it held that Williams' right to confrontation was not violated because it failed to consider that the trial court read Cannon's entire unredacted Information to the jury, including conspiracy counts which named Williams. Because the "right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal," *Pointer v. Texas*, 380 U.S. 400, 405 (1965), this Court finds that Williams' Sixth Amendment rights were violated, and does not adopt the R&R on Williams' Confrontation Clause claim.

## V. CONCLUSION

For the aforementioned reasons, the Court will grant Williams' Petition for a Writ of Habeas Corpus (Doc. 1) pursuant to 28 U.S.C. § 2254 and will vacate Williams' conviction and sentence.  This matter will be remanded to the Court of Common Pleas of Lebanon County, Pennsylvania.  A separate Order shall issue.


Robert D. Mariani
United States District Judge